NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAXTAK CAPITAL ADVISORS LLC, MAXTAK PARTNERS LP and DAVID GREENBAUM,<br><br>Plaintiffs,<br><br>v.<br><br>PARKERVISION, INC. v. JEFFREY L. PARKER and ROBERT G. STERNE,<br><br>Defendants. | Hon. Claire C. Cecchi<br>Civil Action No. 11-cv-7549 (CCC)(JAD)<br><br>OPINION |

This matter comes before the Court upon motion by defendants ParkerVision, Inc. ("ParkerVision"), Jeffrey L. Parker ("Defendant Parker") and Robert G. Sterne ("Defendant Sterne") (collectively, "Defendants") to transfer venue pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Middle District of Florida. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. Upon consideration of the parties' submissions, and for the reasons stated below, Defendants' motion is **GRANTED**.

I.   BACKGROUND.[1]

This is a fraud and negligent misrepresentation action brought by plaintiffs MaxTak Capital Advisors LLC ("MaxTak Capital"), MaxTak Partners LP ("MaxTak Partners") (together with MaxTak Capital, the ("MaxTak Plaintiffs") and David Greenbaum ("Plaintiff Greenbaum") (together with the MaxTak Plaintiffs, "Plaintiffs") against Defendants. In the Amended

---

[1] The facts are taken from the parties' respective submissions.

Complaint, Plaintiffs alleged that during the period of March 2007 to December 2008, Plaintiffs purchased tens of millions of dollars' worth of ParkerVision stock at prices inflated by the fraudulent conduct of Defendants. (Am. Compl. ¶¶ 1-2, ECF No. 26). In addition, the MaxTak Plaintiffs sold numerous put options during the relevant time period that were artificially deflated by Defendants' fraud. (Id.).

On March 2, 2012, Defendants filed the instant motion, which seeks to transfer the action to the United States District Court for the Middle District of Florida. Defendants argue that transfer is appropriate for both the convenience of the parties and witnesses and in the interests of justice because (i) this action has no meaningful connection to New Jersey; (ii) ParkerVision and its relevant activities, witnesses and documents are located in Florida; (iii) the relevant technology was designed, developed and will need to be examined by experts in Florida; (iv) the events triggering the dispute occurred in Florida; (v) Florida has a greater interest in deciding this controversy, which concerns a Florida corporation operating in Florida; and (v) the District Court for the Middle District of Florida will have a greater capacity to hear and decide this controversy to completion in an abbreviated fashion. (Defs.' Mem. Supp. Mot. To Transfer 2, ECF No. 20).

Plaintiffs' oppose the motion to transfer on the grounds that (i) Plaintiffs' choice of forum in the District of New Jersey is entitled to great deference, (ii) the matter has a meaningful connection to New Jersey inasmuch as the MaxTak Plaintiffs met with Defendant Parker in New Jersey, relied upon Defendants' false and misleading statements in New Jersey and suffered harm in New Jersey; and (iii) New Jersey has a public interest in protecting its residents and corporations from wrongful acts of a non-forum corporation. (Pls.' Mem. Opp'n 7-8, 13, ECF No. 30).

Thus, the present motion requires the Court to determine whether, for the convenience of the parties and witnesses and in the interests of justice, this matter should be transferred from this District to the Middle District of Florida.

A. Parties.

Plaintiff MaxTak Capital is a limited liability company organized under the laws of Delaware that maintains its principal place of business in the State of New Jersey. (Am. Compl. ¶ 13, ECF No. 26). Plaintiff MaxTak Partners is a limited partnership organized under the laws of the State of Delaware with its principal place of business located in New Jersey. (Id. at ¶ 14). Plaintiff Greenbaum, an allegedly defrauded investor in ParkerVision, is a resident of New Jersey. (Id. at ¶ 16).

Defendant ParkerVision is a Florida corporation with its principal place of business in Florida. (Id. at ¶ 17). ParkerVision is a public company that designs, develops and sells proprietary radio frequency power amplification technologies and products for use in semiconductor circuits for wireless communication products. (Id. at ¶ 2). Defendant Parker, ParkerVisions's Chairman and Chief Executive Officer, is a resident of Florida. (Id. at ¶ 18). Defendant Sterne, a Virginia resident, is a director of ParkerVision and a partner at ParkerVision's patent counsel law firm of Sterne, Kessler, Goldstein & Fox PLLC. (Id. at 19).

B. Facts.

The conduct that forms the basis of Plaintiffs' Amended Complaint is Defendants' alleged misrepresentations concerning the viability of ParkerVision's "d2p" technology and its prospect for success. Plaintiffs alleged that they relied upon these misrepresentations, which were made in and/or during SEC filings, press releases, investor calls and presentations, when purchasing shares of ParkerVision commonstock (at a price that was artificially inflated by the

3

Defendants' purported misrepresentations) and selling ParkerVision put options (at a price that was artificially deflated by the Defendants' purported misrepresentations). (Pls.' Mem. Opp'n 3, ECF No. 30). Specifically, Plaintiffs asserted that Defendants claimed ParkerVision's primary product, the "d2p" transmitter-power amplifier, produced significant power-savings benefits when employed in telephones and other wireless devices. (Id.). Defendants allegedly represented that, because of the superior performance of the "d2p" technology, ParkerVision would soon secure highly lucrative agreements with manufacturers of wireless communication devices to incorporate the "d2p" technology into their products. (Id.). These representations, according to Plaintiffs, were false because the "d2p" technology did not work – a fact known to Defendants at the time the representations were made. (Id.).

## II.   STANDARD OF REVIEW.

The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000); Days Inns Worldwide, Inc. v. RAM Lodging, LLC, No. 09-2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010). Pursuant to 28 U.S.C. § 1404(a), the Court may transfer a case to any venue where it may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "The purpose of § 1404(a) is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses, and the public against avoidable inconvenience and expense." Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 497 (D.N.J. 1998).

The three factors a court must consider when determining whether to transfer a matter pursuant to § 1404(a) are: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. Id. In addition to these statutory factors, the Third

Circuit established a list of public and private interests that should also be considered when deciding whether to transfer an action:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Johnson v. RiteAid, No. 10-2012, 2011 WL 2580375, at *2-3 (D.N.J. June 28, 2011) (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)).

Thus, the Court must engage in a two part analysis to determine whether a motion to transfer venue should be granted. As a threshold matter, the Court must decide whether the transferee district has proper jurisdiction and venue, such that the case could have been brought in the transferee district in the first instance. Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999). The Court must then conduct an "individualized, case-by-case consideration of convenience and fairness" regarding which forum is most appropriate to consider the case. Id. "There is no rigid rule governing a court's determination; 'each case turns on its facts.'" Id. (citing Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (internal citations omitted)).

III.  **DISCUSSION.**

A.  **The Instant Matter Could Have Been Brought in the Middle District of Florida**.

As a threshold matter, this Court must decide whether the transferee forum has proper jurisdiction and venue to hear the instant action.  Where subject matter jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1391 provides that venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391(b)(2).  Under this standard, it is possible for venue to be proper in more than one district.  Zapf v. Bamber, CIV.A. No. 04CV3823SSB, 2005 WL 2089977, *1, *2 (D.N.J. Aug. 26, 2005) (citing Cottman Trans. Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir.1994)).  Here, the Court finds, and the parties do not dispute in their respective papers, that venue would be appropriate in the Middle District of Florida.  A "substantial part" of the events giving rise to Plaintiffs' Amended Complaint indisputably occurred in Florida, specifically:  ParkerVision is a Florida Corporation whose only business locations are in Florida; the "d2p" technology was researched, designed, developed, built and tested in Florida; and ParkerVision's public filings, press releases and other materials were reviewed and approved in Florida.  (Defs.' Mem. Supp. Mot. To Transfer 2, ECF No. 20).

Having found that this action could have originally been brought in the Middle District of Florida, this Court now turns to whether the private and public factors weigh in favor of such a transfer.

### B. Private and Public Factors.

1. <u>Private Interests.</u>

The primary private interests at issue in this motion to transfer are Plaintiffs' choice of forum, where the claim arose, the convenience of the parties and witnesses, and the location of books and records.

Defendants argue that the private factors weigh in favor of transfer because Plaintiffs' claims arise entirely out facts and circumstances that occurred in Florida, specifically: ParkerVision is a Florida Corporation whose only business locations are in Florida; the "d2p" technology – the functionality and viability of which is the centerpiece of this litigation – was researched, designed, developed, built and tested in Florida; and ParkerVision's public filings, press releases and other materials – which Plaintiff alleged contained misrepresentations – were reviewed and approved in Florida. (Defs.' Mem. Supp. Mot. To Transfer 2, ECF No. 20). Moreover, the overwhelming majority of the documents and witnesses necessary to prove the efficacy of the "d2p" technology and the accuracy of Defendants' disclosures will be ParkerVision's documents and employees – both of which are located in Florida. (<u>Id.</u>).

Plaintiffs, in opposition, argued that their decision to litigate this matter in their home forum of New Jersey is entitled to "great deference." (Pls.' Mem. Opp'n 3, ECF No. 30). Moreover, Plaintiffs attempted to establish a connection with New Jersey – beyond the fact that each of the Plaintiffs is a resident of New Jersey – by pointing to telephone conference calls, as wells as press releases, SEC filings and "other public representations" that Defendants allegedly "intentionally provided to Plaintiffs in New Jersey." (<u>Id.</u> at 4). Plaintiffs also refer to in-person meeting "in the vicinity of Newark Airport" between Defendant Parker and the sole principal of

the MaxTak Plaintiffs (who is not identified), during which Defendant Parker purportedly made reference to the timing of prospects of a deal. (Id.).[2]

Plaintiffs are correct in their assertion that, ordinarily, a plaintiff's choice of forum is given great weight and should not be disturbed unless the balance tips strongly in favor of the defendant. See Lawrence, 56 F.Supp.2d at 452 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). However, deference to a plaintiff's choice of forum is curbed where the forum has little connection to the operative facts of the lawsuit. Liggett Group Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518, 530 (D.N.J. 2000) (citations omitted).

Here, although Plaintiffs instituted this proceeding in their home state, this matter shares little connection with New Jersey beyond the fact that Plaintiffs reside here. Plaintiffs refer to only a single in person meeting that occurred in New Jersey between Defendant Parker and "the sole principal of the MaxTak Plaintiffs" – a meeting which Defendants contend was a "shared ride from New York to Newark Airport." (Defs' Reply Mem. 4, ECF No. 36). In addition, the Court finds tenuous the connection attempted to be established by Plaintiffs through their argument that Defendants "intentionally directed" communications to Plaintiffs in New Jersey in the form of "conference calls, press releases, SEC filings and other public representations." (Pls.' Mem. Opp'n 3, ECF No. 30). According to the Amended Complaint, Plaintiffs relied upon statements made by Defendants during conference presentations that Plaintiffs did not attend (whether held in New Jersey or elsewhere), but "read or listened to" after the conference presentations took place. (Am. Compl. ¶ 77). In addition, Plaintiffs "listened" to investor conference calls held by Defendants either live or after the conference calls concluded. (Id. at ¶

---

[2] Plaintiffs make passing reference to the fact that "Defendant Parker had face to face meetings with ParkerVision investors in New Jersey" (Pls.' Mem. Opp'n 4, 8, ECF No. 30); however, the only in person meeting between any ParkerVision employee and/or representative and any of the Plaintiffs is the meeting "in the vicinity of Newark Airport," which Defendants characterize as nothing more than a "shared ride from New York to Newark Airport." (Defs' Reply Mem. 4, ECF No. 36).

8

78). None of these conference calls, however, are alleged to have been direct communications between Plaintiffs in New Jersey and Defendants, but rather appear to be teleconferences and recordings made available by ParkerVision to investors at large.[3] Moreover, although the press releases and SEC filings issued by ParkerVision were allegedly relied upon by Plaintiffs in purchasing ParkerVision common stock and selling put options, there is no support for the statement that these public documents were specifically directed to New Jersey as opposed to the market at large.[4] In light of the minimal direct connections between the operative facts giving rise to this lawsuit and New Jersey, the Court affords less weight to Plaintiffs' chosen forum.

Next, the parties disagree on another private factor, namely where the claims arose. Plaintiffs argue their claim arose in New Jersey, as this is where they relied upon Defendants' misrepresentations, purchased ParkerVision stock and suffered the loss for which they seek relief. (Am. Compl. ¶ 21). Defendants, however, contend that the claim arose in Florida, which is where (i) the press releases upon which Plaintiffs allegedly relied were published on ParkerVision's website; (ii) ParkerVision's SEC filings were approved and issued; (iii) ParkerVision's conference presentations were prepared; (iv) ParkerVision's earnings calls were broadcast (in most instances); and (v) the "d2p" technology was researched, designed, developed, built and tested. (Defs.' Mem. Supp. Mot. To Transfer 2, ECF No. 20). Neither of these competing arguments can be said to definitively establish where the claim arose. However, the sole fact tying New Jersey to this claim is that Plaintiffs reside in New Jersey — and beyond that there is little linking this cause of action, or the facts giving rise to it, to Plaintiffs' chosen forum.

---

[3] Plaintiffs allege that they accessed recordings of ParkerVision's conference calls through ParkerVision's website. (Am. Compl. ¶ 78).

[4] For example, there are no factual allegations explaining how the Defendants "intentionally provided" these SEC filings or press releases to Plaintiffs in New Jersey, such as sending copies by mail, e-mail or otherwise.

The remaining factors – namely, the convenience of the parties and witnesses, and the location of the books and record – weigh in favor of transfer. As a primary matter, although both parties would experience some level of inconvenience regardless of which forum is ultimately chosen, the greater burden would fall upon Defendants, whose directors, officers and employees with knowledge pertinent to this lawsuit are located in Florida. Similarly, the majority of witnesses and proofs that will ultimately substantiate or refute Plaintiffs claims regarding the viability of the "d2p" technology and the Defendants' knowledge and representations with respect thereto are located in Florida. Defendants identified at least seven potential witnesses who "will provide crucial testimony concerning the research, design, development, testing, creation and viability of the "d2p" technology, [ParkerVision's] business operations, financial results and prospects, and the alleged false statements misrepresentations and omissions," or who have information regarding the "d2p" technology and/or ParkerVision's alleged misrepresentations regarding its relationship with ITT, one of ParkerVision's key customers during the relevant period. (Defs.' Mem. Supp. Mot. To Transfer 9-10, ECF No. 20). In addition, Defendants identified "two key witnesses," Mr. Brett Attaway and Mr. Bill Cochran, who both reside in Florida. (Id. at 10). Moreover, Defendants' argument that the "d2p" technology, the viability of which is central to Plaintiffs' claims, is located in Florida is compelling. Not only is the technology "cumbersome and costly to transport and set up," (Defs.' Mem. Supp. Mot. To Transfer 11, ECF No. 20), but the inspection, examination and testing of the technology would be far more convenient to the parties, and less disruptive to the business of Defendants, if conducted in Florida.

2. Public Interests.

The Court finds that the public interests also weigh in favor of transferring this matter. Practical considerations that could make the trial "easy, expeditious or inexpensive" are apparent, specifically in light of the fact that the majority of parties, witnesses, and the "d2p" technology itself are located in Florida. Although the Court recognizes that New Jersey certainly has in interest in protecting its residents and corporations from the alleged wrongful acts of a non-forum corporation, this interest is no more compelling than Florida's interest in regulating its corporations, especially given the attenuated connection between Plaintiffs and their chosen forum. Likewise, the interests of justice weigh in favor of transferring this action to a district that has a meaningful connection to the operative facts giving rise to the cause of action, beyond a plaintiff's place of residence.

After taking all of the foregoing into consideration, this Court concludes that Defendants met their burden of demonstrating that it would be more convenient for all the parties and witnesses to have this case litigated and tried in the Middle District of Florida.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer the case to the United States District Court for the Middle District of Florida is **GRANTED**.

_____  10/1/12
Joseph A. Dickson, U.S.M.J.

cc: Honorable Claire C. Cecchi, U.S.D.J.